**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

**No. 94-11071**

---

**DWAYNE CASTILLE, ET AL.,**

**Plaintiffs,**

**ROBERT DOYLE PALMER,**

**Plaintiff-Appellee,**

**VERSUS**

**CITY OF DALLAS and**
**WILLIAM RATHBURN, Chief,**

**Defendants-Appellants.**

---

Appeal from the United States District Court for
the Northern District of Texas

(3:94-CV-2010R)

---

August 9, 1996

Before POLITZ, Chief Judge, HILL,[*] and DeMOSS, Circuit Judges.

PER CURIAM:[**]

Appellants, Chief William Rathburn and the City of Dallas,

Texas, appeal the district court's denial of their motion for

---

[*] Circuit Judge of the Eleventh Circuit, sitting by designation.

[**] Pursuant to Local Rule 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

summary judgment on the basis of qualified immunity. Finding that we have no appellate jurisdiction over this interlocutory appeal, we DISMISS.


## BACKGROUND

Plaintiff-Appellee, Robert Doyle Palmer ("Palmer"), is an Anglo male who entered service with the Dallas, Texas Police Department on June 13, 1985. Dwayne Castille ("Castille") is an African-American male who entered service with the Dallas, Texas Police Department on November 18, 1988.

On December 14, 1990, Palmer and Castille, while performing routine patrol duties, responded to a call from the CityPlace building at 2711 North Haskell Avenue. Upon arriving at the scene, Palmer and Castille found three CityPlace security guards standing near a Hispanic male, later identified as Alan Moncado ("Moncado"), who was lying face down in the foliage on CityPlace property. Palmer used his baton to strike Moncado on the sole of Moncado's shoe, and ordered him to get up. Moncado struggled with the officers but he was eventually subdued, searched, and handcuffed.

According to Palmer and Castille, Moncado convinced them that he was not a danger to himself, and that he would lose his job if he was arrested. Palmer and Castille notified that police dispatcher that they were on a public service call and they then

2

released Moncado in West Dallas, at a location which they allege Moncado identified as being near his home. In fact, Moncado's home address was at another location in East Dallas near the CityPlace property.

On December 27, 1990, the Dallas Police Department received a complaint alleging that Palmer and Castille had used excessive and unnecessary force in arresting Moncado. The three CityPlace security guards who were present when Moncado was arrested, as well as a fourth security guard who witnessed the arrest while monitoring security video cameras, reported in separate sworn affidavits that Palmer and Castille had used excessive force in arresting Moncado.

The Dallas Police Department Internal Affairs Division investigated the complaint and concluded, inter alia, that Palmer and Castille had used excessive force and had improperly released Moncado. Palmer and Castille presented their cases in separate "pre-disciplinary hearings" which were held before Police Chief William Rathburn in April 1991 and August 1991. Subsequent to the hearings, Rathburn discharged both Palmer and Castille from the Dallas Police Department.

On October 10, 1991, Palmer and Castille appealed their discharges to the City of Dallas City Manager's Office. On October 28, 1991, Assistant City Manager Teodoro Benavides upheld the discharge of both Palmer and Castille. Palmer and Castille then appealed their terminations to the City of Dallas Civil Service

3

Trial Board ("Trial Board"). Different Trial Boards were convened for each appeal and no individual served on both Trial Boards. On January 29, 1992, Castille's Trial Board reinstated him. On April 15, 1992, Palmer's Trial Board sustained his termination.

Palmer brought suit in state court alleging primarily that his "Trial Board hearing was tainted and biased to ensure that Rathburn's termination of [him] would be upheld." He alleged various state and federal causes of action including, inter alia, alleged violations of his due process rights under the Fourteenth Amendment to the United States Constitution and the Article 1, § 19 of the Texas Constitution; his equal protection rights under the Fifth Amendment to the United States Constitution; his rights to free speech under the First Amendment to the United States Constitution; and race discrimination and conspiracy under 42 U.S.C. § 1985.

Defendants removed the case to federal district court on the basis of federal question jurisdiction, 28 U.S.C. § 1331, and filed a motion for summary judgment alleging that Rathburn, as a public official, enjoys qualified immunity. The district court granted Defendants' motion for summary judgment on the basis of qualified immunity as to Palmer's First Amendment claim, as well as to at least one of his state-law claims, but denied Defendants' motion for summary judgment on the basis of qualified immunity as to Palmer's claims for procedural and substantive due process, equal protection, and conspiracy under § 1985.

4

Defendants now file an interlocutory appeal to our Court arguing that the district court erred in denying Rathburn qualified immunity as to Palmer's claims for procedural and substantive due process, equal protection, and conspiracy under § 1985.

**DISCUSSION**

As set forth in **Harlow v. Fitzgerald**, 102 S. Ct. 2727, 2738 (1982), the qualified immunity defense shields government agents from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. See **Behrens v. Pelletier**, 116 S. Ct. 834, 838 (1996). "Appeals from district court orders denying summary judgment on the basis of qualified immunity are immediately appealable under the collateral order doctrine, when based on an issue of law."[1] **Cantu v. Rocha**, 77 F.3d 795, 801 (1996); **Mitchell v. Forsyth**, 105 S. Ct. 2806, 2816 (1985). However, the Supreme Court held in **Johnson v. Jones**, 115 S. Ct. 2151 (1995), that summary judgment orders in qualified immunity cases which determine only a question of "evidence sufficiency," i.e., which facts a party may, or may not, be able to

---

[1] "Under the collateral order doctrine, a small class of interlocutory orders that (1) conclusively determine, (2) important issues, which are separate from the merits of the action, and (3) which would be effectively unreviewable on appeal from a final judgment are deemed 'final' for purposes of appeal." **Cantu**, 77 F.3d at 802, citing **Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.**, 113 S. Ct. 684, 688 (1993).

5

prove at trial, are not immediately appealable and must await final judgment. **Johnson**, 115 S. Ct. at 2156; **Cantu**, 77 F.3d 802; see also **Nerren v. Livingston Police Dept.**, 86 F.3d 469, 472 (1996) (holding that we do not have appellate jurisdiction over interlocutory appeals taken in qualified immunity cases when "what is at issue in the sufficiency determination is nothing more than whether the evidence could support a finding that particular conduct occurred").

Accordingly, before we can review the merits of the district court's denial of Defendants' motion for summary judgment based upon qualified immunity, we must first determine whether the district court's order is immediately appealable. **Nerren**, 86 F.3d at 471. We find that it is not.

The parties have not stipulated to any facts and the district court did not assume any facts in making its determinations. Many of the relevant facts underlying Palmer's causes of actions are disputed and it is evident from the district court's 16-page order that the district court denied summary judgment because the evidence is not sufficient to establish the facts underlying both Palmer's claims, and Rathburn's qualified immunity defense.[2]

---

[2] The express holding of the district court in its "Memorandum Opinion and Order," as to each of the issues, is as follows:

> Procedural Due Process: "It is for the jury, not this Court, to evaluate this evidence and to decide whether the process afforded to Palmer was

6

For the reasons stated in **Johnson v. Jones**, 115 S. Ct. 2151 (1995), **Behrens v. Pelletier**, 116 S. Ct. 834, 838 (1996), and their progeny in our Circuit, we dismiss this appeal for lack appellate jurisdiction.[3]


## CONCLUSION

The appeal of the City of Dallas, Texas, and Chief William Rathburn is dismissed for lack of appellate jurisdiction.

**DISMISSED.**

_____

meaningful at some point. This Court finds that Palmer has raised an issue of fact as to whether he was afforded due process by Defendants."

Substantive Due Process and Equal Protection: "This Court finds that a reasonable jury, drawing all inferences in favor of Palmer could find that Rathburn, and/or the City of Dallas exerted influence on the trial board on the basis of the fact that Palmer is a white man.
....
The inferences to be drawn from the evidence presented by Palmer on this point must be left to a jury before evaluation."

Conspiracy: "The Defendants also allege that Palmer failed on the second prong of the claim by failing to show that his right to equal protection was violated. This Court has already disposed of that contention in this Order. This Court finds that genuine issues of fact remain on each of the four elements of § 1985(3)."

[3] We express no opinion as to whether qualified immunity should, or should not, be ultimately granted to Rathburn.

7